IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TYRONE ALEXANDER,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CIVIL ACTION FILE NO.

1:07-CV-2688-JFK

## **FINAL OPINION AND ORDER**

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his applications for a period of disability, disability insurance benefits, and supplemental security income. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

## **I.    Procedural History**

Plaintiff Tyrone Alexander protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on October 18, 2002, alleging a disability onset date of December 1, 2000. [Record ("R.") at 14,

48-50, 137-38]. After Plaintiff's applications were denied initially and on reconsideration, an administrative law hearing was held on June 30, 2005. [R. at 141-58]. The Administrative Law Judge ("ALJ") determined that Plaintiff was not entitled to benefits and issued a decision on July 25, 2005. [R. at 14-18]. Plaintiff requested review by the Appeals Council, but Plaintiff's request was denied on August 23, 2007. [R. at 4-7]. As a result, the decision of the ALJ stands as the final decision of the Commissioner, making it subject to judicial review. Plaintiff filed his complaint for judicial review [Doc. 2] in this court on October 25, 2007, and the parties have consented to proceed before the undersigned Magistrate Judge.

**II.  Statement of Facts**

The ALJ found that claimant Tyrone Alexander has status post left hip fracture with fusion and residual hip pain. [R. at 15, 17]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that they did not alone or in combination meet or medically equal the criteria set forth for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. [R. at 15, 17]. The ALJ found that because the claimant was able to perform medium exertional work, he could perform his past relevant work as a restaurant cleaner and dishwasher. [R. at 16, 17]. Therefore, the claimant was not under a disability at any time between

2

December 1, 2000, the alleged onset date, and June 30, 2005, the Plaintiff's date last insured. [R. at 17].

The ALJ's decision [R. at 14-18] states the relevant facts of this case as modified herein as follows:

The claimant was born April 17, 1955, was 45 years old at the time his alleged disability began and is currently 50 years old. He has a high school education and has worked as a restaurant cleaner and dishwasher. The records confirm that the claimant has performed no substantial gainful activity since December 1, 2000, the alleged onset date. The record further reflects that the claimant met the disability insured status requirements of the Act on that date and continued to meet them through June 30, 2005, but not thereafter.

The medical evidence establishes that the claimant has the following impairments which are considered severe under the Social Security Act and Regulations: status post left hip fracture with fusion and residual hip pain. (20 C.F.R. 404.1521 and 416.921). These impairments are not attended by clinical findings that meet or equal the criteria of any impairment set forth in 20 C.F.R. Part 404, Appendix 1, Subpart P.

Claimant sought treatment in September 2001 with complaints of blood in his

3

urine and stool for a week. (Exhibit B2F). He underwent an IVP which was normal. (Exhibit B3F).

In November 2002, the claimant sought treatment for left hip pain from Akinwole Awujo, M.D. (Exhibit B4F). He reported being in a motor vehicle accident in 1990 and subsequently having a left hip replacement. An x-ray of the left hip showed a nonunion fracture of the head of the femur and stabilizing pins and screws with fusion of the left hip joint as well as an old fracture of the pelvic bone. (Exhibit B4F at 6-7). Dr. Awujo noted that there was significant atrophy involving the left thigh and the leg as well as shortening of the left leg compared to the right leg. (Exhibit B4F at 7). Claimant had a limping gait. (Exhibit B4F at 2).

A State agency physician reviewed the record in December 2002 and opined that claimant retains the ability to perform medium work. (Exhibit B6F). He opined that claimant has the ability to lift/carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk about six hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for about six hours in an eight hour workday. (Exhibit B6F at 2). He noted that Dr. Awujo did not quantify the limitations of restriction in using the hip joint. (Exhibit B6F at 7).

In March 2005, claimant sought treatment for six months of left hip pain and

4

three to four weeks of pain in his leg below the knee. In June 2005, he again sought treatment for left hip pain and was prescribed Motrin. No restrictions in activity were given. (Exhibit B7F).

Claimant testified that he last worked in 2000, when he was working as a dishwasher. He stated that he resigned the job because he could no longer stand eight hours a day. He stated that he has left hip pain which prevents him from sitting too long. He stated that he cannot raise his leg. He said that he has had these symptoms for the last three to four years. He stated that he uses over the counter Motrin for pain. He has also used a cane for the last five years because it helps his balance. He acknowledged that a doctor had not prescribed the cane. He denied any side-effects from his medication. He stated that he lives with his mother. He cooks a little and watches television.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

### III. Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

5

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited. The court's function is to determine: (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner; and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that he is unable to perform his former type of work. If the claimant satisfies his burden of proving disability with respect to his former type of work, the

burden shifts to the Commissioner to demonstrate that the claimant, given his age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy. See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five (5) step sequential procedure must be followed when evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a) and 416.920(a). In the sequential evaluation, the Commissioner must consider in order: (1) whether the claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether the claimant has a severe impairment which significantly limits his ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether the claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether the claimant can perform his past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether the claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f). If, at any step in the sequence, the claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

**IV.    Findings of the ALJ**

The ALJ made the following findings of fact:

1. The claimant has not performed substantial gainful activity since the alleged disability onset date.

2. The claimant met the disability insured status requirements of the Act on December 1, 2000, the date the claimant stated he became unable to work, and continued to meet them through June 30, 2005.

3. The medical evidence establishes that the claimant has these severe, medically determinable impairments: status post left hip fracture with fusion; residual hip pain.

4. Claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. 404, Appendix 1, Subpart P.

5. The claimant has an underlying medically determinable impairment that could possibly cause some pain or other symptoms, but claimant's allegations with regard to the severity and functional consequences of the symptoms are not fully credible. (SSR 96-7p).

6. The claimant has the residual functional capacity to perform medium work (20 C.F.R. 404.1545 and 416.945). Claimant has the ability to lift/carry fifty pounds occasionally, twenty-five pound frequently, stand and/or walk about six hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for about six hours in an eight hour workday.

7. The claimant's impairments do not preclude performance of his past relevant work as restaurant cleaner and dishwasher.

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. (20 C.F.R. 404.1520(e) and 416.920(e)).

[R. at 17].

## V. Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Tyrone Alexander had not engaged in substantial gainful activity since the alleged onset of disability on December 1, 2000, through his date last insured of June 30, 2005. At the second step, the ALJ determined that the claimant has status post left hip fracture with fusion and residual hip pain. [R. at 15-17]. Although these impairments were "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not alone or in combination meet or equal the requirements for any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. [Id.]. The ALJ found at the fourth step of the sequential evaluation that because the claimant was able to perform medium exertional work, he could perform his past relevant work as a restaurant cleaner and dishwasher. [R. at 16, 17]. Therefore, the claimant was not under a disability at any time between December 1, 2000, the alleged onset date, and June 30, 2005, the Plaintiff's date last insured. [R. at 17].

Plaintiff argues that the ALJ erred by disregarding the opinion of an examining physician, Dr. Akinwole Awujo. [Doc. 12 at 5-8]. Plaintiff contends that the ALJ also erred by not developing the physical and mental demands of Plaintiff's past relevant work. [Doc. 12 at 8-10]. The Commissioner argues that the ALJ applied proper legal

9

standards and that substantial evidence supports the ALJ's decision regarding both the opinion of Dr. Awujo and Plaintiff's past work. [Doc. 13].

On November 7, 2002, Plaintiff was seen for a consultative exam administered by Dr. Awujo, who found that Plaintiff suffered from hip pain. [R. at 100-01]. Dr. Awujo stated in his exam report that Plaintiff had been involved in an automobile accident which resulted in a fracture of the hip bone and femur. [R. at 101]. Dr. Awujo found "significant atrophy involving the left thigh and the leg as well as shortening of the left leg compared to the right leg. The left leg is about two inches shorter than the right leg." [Id.]. The physician also found that Plaintiff was unable to flex his left hip "which resulted in limping gait for this patient as well as drawing the leg behind when he walks." [Id.]. An x-ray of the left hip showed "a nonunion fracture of the head of the femur and stabilizing pins and screws with fusion of the left hip joint as well as old fracture of the pelvic bone." [R. at 101]. Dr. Awujo concluded that Plaintiff "will probably not be able to do activities involving usage of this joint such as standing, bending, stooping, or manual activities." [Id.].

Plaintiff argues that the ALJ erred when he gave little weight to Dr. Awujo's opinion. [Doc. 12 at 7]. The ALJ found that Plaintiff would be able to walk and stand for up to six hours in an eight hour workday. [R. at 15-17]. According to Plaintiff, the

10

other medical evidence in the record, such as x-rays, support Dr. Awujo's opinion that Plaintiff was unable to stand, bend or stoop. [Doc. 12 at 7-8; R. at 101]. Plaintiff notes that he was seen at Grady Hospital in March 2005 for hip pain that had been present for six months and for leg pain below the knee that had lasted three to four weeks. [R. at 111]. Plaintiff was also seen at Grady in June 2005 for left hip pain that had worsened during the previous month. [R. at 112]. Based on these facts, Plaintiff contends that the ALJ was obligated to give significant weight to Dr. Awujo's opinion and that his failure to do so was error.

The undersigned disagrees. The ALJ clearly articulated the reasons for giving little weight to Dr. Awujo's opinion, and her decision was supported by substantial evidence. [R. at 15-16, 101]. The ALJ, for example, noted that a state agency physician who reviewed Dr. Awujo's opinion found that the opinion "doesn't quantify the limitations in terms that can be applied" to an assessment of Plaintiff's residual functional capacity ("RFC"). [R. at 16, 109]. And, while Dr. Awujo found that Plaintiff was limited in his ability to use his hip due to pain, the ALJ concluded that the objective medical evidence did not support Plaintiff's alleged limitations caused by pain. [R. at 16].

The ALJ explained that she evaluated Plaintiff's alleged pain and other

11

symptoms pursuant to Social Security Ruling ("SSR") 96-7p and concluded that "the allegations exceed the limitations reasonably expected from the medical findings." [R. at 16]. SSR 96-7p provides, in part:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. . . . On the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.

SSR 96-7p. The ALJ pointed out that "[a]lthough the claimant testified to severe, unremitting pain, the record reflects that there are large gaps of time between visits to the doctor (or any other health care professional) seeking relief from that pain." [R. at 16]. This is correct.

Plaintiff testified that he was in an automobile accident at some point in the early 1990's which resulted in a replacement of his left hip at that time. [R. at 145-47]. After the hip replacement surgery, Plaintiff worked as a dishwasher for five years, until approximately 2000. [Id.]. Plaintiff saw Dr. Awujo for a consultative exam in November 2002, but he did not seek any medical treatment for hip pain until March

12

2005. [R. at 15, 111]. He again sought medical attention for his hip pain three months later in June 2005. [R. at 15, 112]. These were the only instances of medical treatment in the record during the relevant time.

The claimant bears the initial burden of offering evidence showing that he is unable to perform his previous work. Jones v. Bowen, 810 F.2d 1001 (11th Cir. 1986). Plaintiff argues that the lack of medical evidence makes Dr. Awujo's opinion even more important. [Doc. 12 at 7]. The undersigned, however, finds that in accordance with SSR 96-7p, Plaintiff's lack of medical treatment for his hip pain supports the ALJ's conclusion that Plaintiff's pain did not cause significant functional limitations. [Doc. 12 at 7; R. at 16].

The ALJ's decision is also supported by other evidence in the record which was discussed in the ALJ's decision. The ALJ noted that Plaintiff "is no longer taking any form of prescription drug or medication for relief of the alleged severe pain." [R. at 16]. Instead, Plaintiff only takes over-the-counter pain relievers such as Motrin. [R. at 15-16, 153]. Courts have found that it is entirely appropriate to evaluate a claimant's allegations of disabling pain and resulting functional limitations in light of whether the claimant seeks pain relief from prescription or over-the-counter medication. Washington v. Barnhart, 175 F. Supp. 2d 1340, 1348 (M.D. Ala. 2001).

The ALJ also pointed out that although Plaintiff uses a cane, it was not medically prescribed. [R. at 16]. Furthermore, the ALJ stated in her decision that "there are no work restrictions imposed by treating physicians." [Id.]. Based on these facts, the ALJ found that Plaintiff's "testimony with regard to the severity and functional consequences of his symptoms is not fully credible" and that Dr. Awujo's opinion was not entitled to substantial weight. [Id.]. Instead, the ALJ accorded significant weight to the state agency physician, Dr. Lehman, who found that Plaintiff had the ability to perform medium work and to sit, stand and walk for about six hours in an eight hour workday (with normal breaks). [R. at 16, 103-10].

In summary, the lack of medical treatment, the fact that Plaintiff does not take prescription pain relievers, and the lack of restrictions imposed by treating doctors, among other factors, were all noted by the ALJ in support of her decision. The ALJ gave explicit reasons for not giving significant weight to Dr. Awujo's opinion, and the decision was supported by substantial evidence.

Plaintiff next argues that the ALJ erred by not developing the record with regard to the physical and mental demands of his past relevant work. Citing SSR 82-62, Plaintiff contends that there must be documentation of past work which includes information about strength, endurance, manipulative ability, mental demands and other

14

job requirements. [Doc. 12 at 8-10]. Plaintiff argues that the ALJ could have fulfilled this requirement by having a vocational expert at the hearing. [Id.]. The ALJ did not include in the decision any specific information regarding Plaintiff's past relevant work as a restaurant cleaner and dishwasher. Instead, she cited to the description of the Dictionary of Occupational Titles (DOT) with respect to how this work is performed in the national economy.[1] [R. at 17]. Plaintiff argues that this explanation is not adequate to satisfy SSR 82-62's requirement that the ALJ carefully consider the interaction of the limiting effects of the claimant's impairments and the demands of his past relevant work. [Doc. 12 at 9]. The court finds Plaintiff's arguments unpersuasive.

The ALJ found that Plaintiff had the residual functional capacity to perform medium exertional level work. [R. at 17]. According to the ALJ's findings, Plaintiff "has the ability to lift/carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk about six hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for about six hours in an eight hour

---

[1] The ALJ mistakenly stated that the "work as restaurant cleaner and dishwasher as performed in the national economy according to the Dictionary of Occupational Titles at 599.687-030 was at the light exertional level," when the DOT, as the Commissioner acknowledges, classifies the work as medium. [R. at 17; Doc. 13 at 16]. Given the fact that every aspect of the ALJ's opinion notes that Plaintiff is capable of performing medium level exertional work, it is clear that this was a typographical error that had no bearing on the outcome of the ALJ's decision. [R. at 14-18].

15

workday." [R. at 17]. In light of these findings, the ALJ concluded that Plaintiff was able to perform the work of restaurant cleaner and dishwasher as performed in the national economy according to the DOT. [Id.].

As the Commissioner points out, Plaintiff's description of the way he performed his past work establishes that it did not require more exertion than that which is necessary to perform medium level exertional work. [Doc. 13 at 16]. At the administrative hearing before the ALJ, Plaintiff testified that his work as a dishwasher from approximately 1995 to 2000 required him to stand almost the entire workday. He was, however, allowed to take numerous breaks during the day. [R. at 146-47]. Plaintiff testified that he could not continue working in that job because he had difficulty standing. [Id.]. SSR 82-62 provides, "Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations." The work demands of Plaintiff's job relevant to his medical limitations involve standing, and the record contains "factual information" about these demands in the form of Plaintiff's testimony. SSR 82-62.

There is nothing in the record which indicates that Plaintiff's past work as he performed it was different in any way relevant to Plaintiff's RFC when compared to the work as it is performed in the national economy. Dictionary of Occupational Titles

16

§ 599.687-030 (4th ed. 1991). For this reason, and because Plaintiff failed to show that he had additional limitations other than those found by the ALJ in the RFC assessment, the court concludes that the ALJ did not err when she did not include detailed information about Plaintiff's past relevant work. Plaintiff was found to be capable of performing medium level work, and the description of his job by both the DOT and Plaintiff himself supports the ALJ's conclusion that he was not precluded from performing his past relevant work as a restaurant cleaner and dishwasher. [R. at 16-17]. While Plaintiff contends that the ALJ should have had a vocational expert at the administrative hearing, Eleventh Circuit case law makes it clear that vocational expert testimony is only necessary after the claimant has met his burden of showing that he is unable to perform his past relevant work. Lucas v. Sullivan, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990); Lamb v. Bowen, 847 F.2d 698, 704 (11th Cir. 1988); Schnorr v. Bowen, 816 F.2d 578 (11th Cir. 1987); Chester v. Bowen, 792 F.2d 129 (11th Cir. 1986).

Plaintiff also argues that because he "is unable to read and write and is between 45 and 50 years old, he would grid out disabled at the light level if he is unable to do his past relevant work according to the Social Security grid rules." [Doc. 12 at 10]. Plaintiff cites Rule 202.16 in support of this argument. [Id.]. Plaintiff argues that the

17

ALJ's failure to determine the mental demands of Plaintiff's past relevant work prevents this court from determining "whether Mr. Alexander could do his past relevant work and, if not, whether he would grid out disabled or not." [Doc. 12 at 10]. As the Commissioner notes, the deficiency in Plaintiff's argument is that even assuming that he is illiterate and his past work was unskilled, grid rule 202.16 would direct a finding of "not disabled." 20 C.F.R. Part 404, Subpart P, Appendix 2 (2008). Moreover, Plaintiff's alleged inability to read or write did not preclude him from performing his past work as a dishwasher and restaurant cleaner for many years, and there is no evidence in the record that his mental abilities subsequently declined. This aspect of the ALJ's decision was not erroneous.

**VI. Conclusion**

As noted *supra*, it is the claimant's burden to prove "that his impairment prevents him from performing his past relevant work." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). Plaintiff did not carry this burden. For all the foregoing reasons and cited authority, the court finds that the decision of the ALJ was supported by substantial evidence and was the result of an application of proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**. See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

AO 72A
(Rev.8/82)

**SO ORDERED**, this 25th day of September, 2008.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)